CHARLES M. K. PAULISON ET AL. ADS. SAMUEL S. HALSEY, ADMINISTRATOR OF EUGENE AYRES, DECEASED.

1. A consent to the reference of an account by the court, under §§ 201 and 252 of the practice act, is not an abandonment of exceptions, or a submission to arbitration, when the parties have expressed a different purpose by entering their dissent.

2. Where there is a statutory provision for reference to one referee, the action cannot be referred, within the statute, to three referees, by consent of parties.

3. If there is an irregular reference, and a trial of exceptions to the report before a jury, although the report be admitted as evidence, a new trial will not be granted where the verdict is right, irrespective of such illegal evidence.

4. The undertaking of sureties on the bonds of a deputy collector of internal revenue, must receive a strict interpretation, both as to time and terms.

5. Whatever tax lists the deputy collector receives and receipts for after the date of the bond and within the time of his appointment to which the bond relates, both he and his sureties are chargeable for, if the taxes are uncollected and unabated by his default or neglect.

6. The payment for services of a succeeding collector, in making claims and obtaining abatement of taxes, made necessary by the default or neglect of the deputy, is recoverable on his bond.

7. Where the collector is charged by the department with the taxes in his hands for collection, and has paid them in the settlement of his accounts, a charge of interest on balance in the hands of the deputy, not paid over, uncollected and unabated by his neglect, is legal.

8. The agreed salary of the deputy ceases after allowance of the time given by the regulations for collection of taxes; services rendered afterwards are referable to the time within which the taxes should have been collected by such regulations, and are for his own credit and safety.

This was an action of debt upon two deputy collector's bonds, given by Cornelius M. K. Paulison, Dudley S. Gregory, Alfred Spear and Simon Zabriskie, to Eugene Ayers, collector of internal revenue for the fourth collection district of the state of New Jersey.

By consent of parties, the matters of account between the collector, Eugene Ayers, and the deputy collector, Cornelius M. K. Paulison, involved in the issue, were referred to Benjamin F. Robinson and James V. Bentley, chosen by the parties, and Joseph W. Ballentine, named by the court, reserving leave to both parties to enter their dissent.

The referee's report, dated April 23d, 1873, awarded $2571.31 to the plaintiff.

Both the plaintiff and defendant filed exceptions to the report and demanded a trial by jury.

At the Morris County Circuit Court, in January Term, 1874, the cause was tried before a jury and a verdict rendered for the plaintiff for $5118.03.

A rule to show cause why the verdict should not be set aside and a new trial granted, having been allowed, the case came on for argument to make the rule absolute.

Argued at June Term, 1874, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the defendants, *J. C. Paulison* and *Hoxsey*.

For the plaintiff, *H. C. Pitney*.

The opinion of the court was delivered by

SCUDDER, J.    Matters of account being in controversy in this action, the parties agreed to refer them to three referees, two chosen by themselves and one by the court.

Paulison et al. ads. Halsey, Administrator.

The proceedings were designed to be under sections 201 and 252 of the practice act, but the referees were not appointed by the court on its own motion; the parties consented to the order, and by like consent, three referees were named instead of one. The dissents, the report, exceptions, and trial by jury are all according to the provisions of section 201 of the practice act.

The report of the referees having been admitted at the trial as *prima facie* evidence of all the matters therein found and reported, one of the causes assigned for a new trial is, that such report is in the nature of an award under arbitration, and not a statement of accounts under the statute authorizing the reference of matters of account to a single referee only.

The proceedings in this case differ from the provisions of section 201, in the formal consent to the rule of reference, and to the appointment of three referees instead of one.

While I think that this statute intends a compulsory reference by the mere order of the court, from the well guarded provisions for exceptions to the report, and for a trial by jury; and, while there is an apparent inconsistency in dissenting from a reference, when the party in terms consents to such reference, yet, as the purpose of the dissent is merely to secure a trial by jury of such exceptions as he may make to the report, the party should not be concluded by such consent, when it plainly appears that he intended to avail himself of the other provisions of the act. Such consent is not an abandonment of his right of trial by jury, or a submission to arbitration. He consents to the reference, but dissents to its conclusiveness. The consent, therefore, does not make this an arbitration, when the parties have clearly expressed a different purpose.

There is more difficulty in the appointment of three referees, instead of one, because the statute says that the reference is to be *to some competent person as a referee.* An accountant is needed to state the amount in controversy. One fit person is better than two, three, or more, for such purpose. So the act has decided. Can the court then say that mere

number makes no difference ? A reference to three is different from a reference to one ; and neither the rule of the court, nor the consent of parties, can alter the statute which says there shall be a single referee.

Where there is a statutory provision for reference, the action cannot be referred within the statute to a greater or less number than that prescribed. *Dodge* v. *Waterbury*, 8 *Cow.* 136 ; *Rathbone* v. *Lownsbury*, 2 *Wend.* 595.

This question is not before us on writ of error, nor directly by motion to set aside the report of referees, but upon a rule to show cause why a new trial should not be granted. This depends upon something more than the illegality of the evidence admitted to go to the jury. Though the evidence be illegal, the court will not interfere, if the person complaining has not been injured by such admission, or if justice has been done by the verdict, and the verdict is right, irrespective of such illegal evidence. Although the report, when admitted in evidence, is *prima facie* evidence of all the facts therein found and reported, so as to put the burden of proof on the party excepting, yet there is no injustice in this, when he has consented to the reference, though such consent is informal and illegal. The court will still look beyond the disadvantageous position in which he has placed himself, to see whether the verdict is right upon the whole evidence.

If the reference and report be regarded as illegal, and taken out of the case, so that the verdict of the jury stands upon the pleadings and the other evidence, as in ordinary cases, then we shall have this case in the position in which we shall consider it, to determine whether it is right and just between the parties. There is no difficulty in this, because the exceptions to the report of the referees cover all the material points in controversy ; and the evidence is full upon these points, independent of the report.

The jury have found that C. M. K. Paulison, as deputy collector, was indebted to Eugene Ayres, collector of internal revenue of the United States, of the third division of the fourth collection district of New Jersey, which included

the county of Passaic, in the sum of $5118.03, for which they render a verdict in favor of the plaintiff against Paulison and his sureties, on the two bonds in controversy in this suit, given by them to Ayers. One of these bonds bears date April 9th, 1863, for the penal sum of $25,000 ; the other is dated March 24th, 1865, for the penal sum of $50,000. The conditions of the bonds are alike, reciting that Paulison has been duly appointed by Ayers as deputy collector of his district, to hold the said appointment during the term of said Ayers' appointment as collector of internal revenue, unless sooner revoked by Ayers. It states as follows : "Now, if the said Charles M. K. Paulison shall honestly and faithfully perform the duties of such deputy collector in said division, during the time of his appointment aforesaid, according to the acts of Congress in such case made and provided, and shall account for and pay over to said Eugene Ayers all moneys by him collected and received as such deputy collector, as often as the same shall be required by said Eugene Ayers, without any fraud or further delay, then this obligation to be void and of none effect, but otherwise to remain in full force and virtue." In the performance of this condition, Paulison and his sureties were bound. The breaches alleged are, that he did not perform the duties of deputy collector, and did not account for and pay over to the collector all moneys by him collected and received, in manner and form stipulated, during the term for which he held the appointment.

The evidence at the trial was very full and intricate in some of its details, but only such parts of it are material on this rule as are within the causes urged in this court for a new trial.

Passing for the present, the general reasons, the more specific will be considered in their order.

And first, it is charged that the verdict includes large amounts of taxes, both before and after the time that the defendants are liable under the condition of their bonds.

One of these bonds is dated April 9th, 1863, the other, March 24th, 1865. They appear by the evidence to have

been cumulative or additional security. The second bond was not given upon any new appointment or increased responsibility. They are given by the same parties and the conditions are alike. There can be no recovery upon the second bond for defaults prior to March 24th, 1865; nor upon the first bond for liabilities before April 9th, 1863.

Whatever may be the liability of Paulison to Ayers' estate, for transactions between them, before the date of the first bond, it is very clear that the sureties on his bonds, cannot be responsible beyond the time and the conditions of the bonds which they have signed.

Justice Story, in *Miller* v. *Stewart*, 9 *Wheat.* 680, says: "The whole series of cases, from *Lord Arlington* v. *Merricke*, 2 *Saund.* 412, down, proceed upon the ground that the undertaking of the surety, is to receive a strict interpretation, and is not to be extended beyond the fair scope of its terms." But about this rule of construction, there is no difference; the questions between the parties, arise from the facts. The particulars of the plaintiff's account show an aggregate amount of $937,842.56, for tax lists and penalties from April 17th, 1863, to September 6th, 1865; and credits from December 17th, 1862, to July 27th, 1871, amounting to $933,961.10. To the balance, $3881.46, the plaintiff adds interest on $7381.46, a claimed balance, from January 1st, 1866, to July 27th, 1871, when the last payment of $3500 was made, amounting to $2626. These two sums, $3881.46 and $2626, amounting to $6507.46, make the total claim of the plaintiff.

The jury have found the balance due the plaintiff July 1st, 1866, $5782.40. To this they have added interest to July 27th, 1871, $2054.08. From the sum $7836.48, they have deducted $3500, a cash payment at that date, leaving a balance of $4336.48. To this they have added interest from July 27th, 1871, to February 27th, 1874, $781.55, making the amount of their verdict $5118.03.

From this statement, it is apparent that the jury have included in their verdict, the items to which objection is made.

These are the items in the account which antedate the first bond of April 9th, 1863.

Eugene Ayers first appointed Paulison deputy collector, by writing, under seal, November 20th, 1862; and again by like writing, under seal, he appointed him April 15th, 1863. Between the time of the two appointments, it appears on the credit side of the plaintiff's bill of particulars, that Paulison collected and paid to Ayers, $10,378 96. Whether this was all he had collected, or whether he was in default for that time, does not appear.

The first charge in the plaintiff's account is dated April 17th, 1863, for annual list of 1862, $12,523.35. At the same date, the monthly lists for September, October, November, and December, 1862, and for January, 1863, amounting to $44,782.02, are entered. Whether these lists were in Paulison's hand, prior to his appointment of April 15th, 1863, does not certainly appear; but his receipts are produced for these several items, dated April 17th, 1863, which was after the date of the first bond in suit. He accepted these lists, and assumed his responsibility as deputy collector, under the act of Congress, as to these several lists, after he and his sureties were bound for the faithful performance of these duties. It does not appear that he was in any default before this time in reference to these lists, and for what occurred afterwards, the sureties would certainly be bound. The jury did right in charging these items for which Paulison had given the collector a receipt and requiring him to discharge himself by proper vouchers and evidence. There can, of course, be no objection to credits allowed before April, 1863, in plaintiff's account, for these are for the benefit of the defendants.

It is, moreover, insisted by the plaintiff's counsel that the defendant, Paulison's, cash book shows that all the taxes were paid up and a balance struck, on May 1st, 1863, which included all collections prior to that time. This evidence was surely enough to put on the defendants the burden of proving that the lists prior to April 9th, 1863, were paid out of moneys collected from other lists, placed in Paulison's hands

after that date, and so the court properly charged the jury. I find no such evidence in the case on the part of the defendants and the verdict is right upon this point.

The objection, also, includes Paulison's omissions and neglects after October 1st, 1865, when it is said Paulison's appointment ceased. I do not find that he is charged with any tax lists or collections after that date, and for those he had received before, he must discharge himself, or, on default, he and his sureties will be responsible. The defendants might show that Paulison has delivered up the lists received within their time, and had been discharged, or that he had proceeded and made collections afterwards, by Ayers' assent, and paid them over. But there was no final discharge of Paulison, as deputy collector, by Ayers. He ceased to send him lists for collection after October 1st, 1865, and permitted him to collect those he had received prior to that time, and for these collections he has credits in the plaintiff's account, so far as they have been paid.

This appointment as deputy collector was during the term of Ayers' appointment as collector of internal revenue, unless sooner revoked by Ayers, as appears in the recitals of the bonds upon which suit is brought, and so long as he continued to act as deputy within the time of Ayers' appointment, with his consent, the sureties are bound by the condition of their bonds.

Another cause assigned for new trial is, that the jury included in their verdict against the defendants the whole amount of tax lists in Paulison's hands during all the time he held office as deputy collector, after crediting him with the credits above referred to.

Both the acts of Congress of July 1st, 1862, (§ 5,) and June 30th, 1864, (§ 10,) which authorize the appointment of deputy collectors, by the collectors of internal revenue, with like powers as the collectors, enact that such collectors shall, in every respect, be responsible, both to the United States and to individuals, as the case may be, for all moneys

collected, and for every act done by any of their deputies, whilst acting as such, and for every omission of duty.

By section 24 of the act of July 1st, 1862, each collector is charged with the whole amount of taxes by him receipted, contained in the assessors lists, unless upon proof made to the satisfaction of the first comptroller of the treasury, they shall be rebated as uncollectable.

The instructions, regulations and directions made by the commissioner of internal revenue, under directions of the secretary of the treasury, are binding upon the collectors and their deputies, in the performance of the duties enjoined by the acts of Congress.

Collectors are required to give notice to tax payers that duties are due. Payment must be made not less than ten days after notification. On failure to pay, ten per cent. must be added, and after twenty days' neglect to pay, the collector or deputies must proceed and collect the taxes and penalties by distress and sale of goods, chattels and effects of delinquents.

If the collector fails to collect, a warrant of distress is to issue against his estate and that of his sureties.

These are some of the provisions of the acts of Congress, which the deputy collector and his sureties in this case have, in the condition of their bonds, stipulated shall be performed.

In measure of responsibility, and the means by which the collector may be relieved, are also indicated.

If the deputy, therefore, takes the lists with which the collector is charged when he receives them from the assessor, and fails to collect, and does not furnish the collector with the proof of facts within his knowledge, by which those that are uncollectable may be abated, the measure of responsibility of the deputy collector to the collector must be fixed by his liability to the United States. He is charged with the whole amount of taxes for which he has receipted, unless abated under the act of Congress and the regulations of the department.

These regulations are contained in circulars issued by the office of internal revenue. There are in these, provisions for

prompt collections and settlements by the collectors. If the deputy fails to collect the taxes, and the collector is charged with them, then he has not performed his duties according to the act of Congress, and he and his sureties are liable for these taxes. So the judge charged the jury, and so they have found ; and both the ruling and the finding are right, according to the evidence.

In what is called the Ayers and Antrobus list, made by Theodore Ayers, brother of Eugene, with the assistance of Charles Antrobus, a clerk of Paulison, on July 20th, 1866, being a list of uncollected taxes taken from Paulison's official books. There appears upwards of $8000 of uncollected taxes at that date. Part of these were afterwards abated by the efforts of the collector, and the amount reduced to the principal sum, and balance found by the verdict of the jury.

Through the efforts, mainly, of J. Boyd Headley, who succeeded Eugene Ayers as collector, and made out the claims for abatement in these lists, and went to Washington to get an allowance, part of the amount of these charges were afterwards abated. He also collected a small sum of about $70. For these services he charged Ayers' estate $500. But, as there were claims abated in other counties of the district besides Passaic, for which alone Paulison was deputy collector, the jury have allowed $250 for these services, and assessed that amount against the defendant in their verdict. As these services were made necessary by the neglect of Paulison to fill out the blanks and prepare the claims for abatement, which were sent him with instructions by Ayers at different times, as appears by the letters and papers offered in evidence, the charge is correct.

The jury also found that Paulison was chargeable with the balance of taxes unsettled in his hands on July 1st, 1866, $5782.40, which he had either collected, or which were lost to the collector by his neglect. As no tax lists were put in his hands for collection after October 1st, 1865, the time given was reasonable within the time required for payment by the defendant, which was usually six months. The jury

charge him interest on this balance from July 1st, 1866 ; credit him with a cash payment on account, dated July 27th, 1871, and charge interest on the balance, from July 27th, 1871, up to the sitting of this court, making the sum of $5118.03, for which their verdict was rendered. If the jury believed from the evidence and the regulations of the defendant, that Ayers was charged with this balance from July 1st, 1866, then the charge of interest in his favor is right. If he had paid the amount in the settlement of his accounts with the department, then he should be allowed interest as an advance payment made for his deputy, Paulison.

It is further objected to the verdict, that the jury refused to allow Paulison his salary as deputy collector, to which he was entitled. Prior to December, 1861, Ayers had agreed to pay Paulison one per cent. of the taxes collected as his fees. At that date he agreed to pay him a salary at the rate of $2000 per year for his services, in place of the commission. The jury allowed the defendant credit for services of Paulison for three months after October 1st, 1865, at the rate of $2000 per year, i. e., $500. After that, they refused him any salary, because he was in default.

As the last monthly list for June, 1865, was given to Paulison for collection, July 28th, 1865, and the last special list for June, including penalties, was delivered to him August 14th, 1865 ; and, after that, only a few small items for penalties and licenses up to September 6th, 1865, I am not disposed to disturb the verdict because the jury have found that three months after October 1st, 1865, was a reasonable time to settle the business in his hands. It is true, he continued to make payments on account to Ayers at different times, up to April 13th, 1866, but such payments are referable to the time within which they should have been collected, and cannot extend the time of service and salary beyond that time ; they are made for his own credit and safety.

There are also reasons assigned for refusal of the court to charge as requested by the defendant's counsel. These points

have been already considered, so far as they are deemed material to the decision of this motion.

It was also argued that the court admitted incompetent and illegal evidence offered by the plaintiff, and rejected competent and legal evidence offered by the defendants. These relate mainly to the reference and the report of the referees, the legal effect of which has been already determined.

Other exceptions to the rulings of the court were not brought particularly before us on the argument of the cause, and in reading the case, there do not appear any outside of those reading to the reference which could materially affect the defendant's case. The verdict is sustained by the evidence, and should stand.

The rule for new trial is refused.

The CHIEF JUSTICE, and Justices BEDLE and WOODHULL. concurred.